# EXHIBIT 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ALVA ADVANCE LLC,

                Petitioner,

    v.

DREAMTEX INC. and
EVAN C. YOUNG,

                Respondents.

**INDEX NO. 652188/2022**


# MEMORANDUM OF LAW IN SUPPORT OF MOTION
# FOR SANCTIONS

Shane R. Heskin, Esq.
Stuart J. Wells, Esq.
7 Times Square, Suite 2900
New York, NY 10036-6524
T: 215-864-6329
F: 215-399-9603
heskins@whiteandwilliams.com
wellss@whiteandwilliams.com

*Attorneys for Respondents*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

LEGAL ARGUMENT ............................................................................................................7

I.     THE COURT SHOULD AWARD SANCTIONS. ....................................................7

     A.     Sanctions are warranted because Petitioner's counsel failed to cite adverse authorities from his own cases. ..................................................9

     B.     Sanctions are warranted because Alva and The Rosen Law Firm failed to cite controlling adverse authority..........................................................10

     C.     Sanctions are warranted because Mr. Rosen cites the wrong standard in obtaining the TRO.........................................................................11

     D.     Sanctions must be awarded because the TRO unequivocally violated the Separate Entity Rule. ...............................................................12

     E.     Sanctions must be awarded to deter future conduct by Petitioner and the Bar at large. ..............................................................................13

CONCLUSION....................................................................................................................15

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
   37 N.Y.3d 320 (2021) ............................................................................................4

*Alva Advance LLC v. F & L Express Inc.*,
   No. 2021-07872 (2d Dep't Oct. 29, 2021).........................................................2, 10

*Alva Advance LLC v. F&L Express Inc.*,
   Appellate Division Docket No. 2021-07872 (2d Dep't Oct. 29, 2021).....................6

*Capital Advance Services, LLC v. Zomongo.tv USA Inc.*,
   Index No. 1229/2018, Decision and Order (Kings Cnty. Sup. Ct. May 6, 2022)...................12

*Cattani v Marfuggi*,
   26 Misc 3d 1053 (Sup. Ct., N.Y. Cty., Nov. 25, 2009), *aff'd* 74 A.D.3d 553 ...........9

*Cicio v. New York*,
   98 A.D.2d 38 (2d Dep't 1983) ...................................................................8, 9, 12

*Cobalt Funding Solutions, LLC v. Litigation Practice Group PC*,
   No. 2021-07565 (2d Dep't Oct. 20, 2021).................................................2, 5, 6, 10

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*,
   94 N.Y.2d 541 (2000) .............................................................................1, 6, 11

*Cronan v. Schilling*,
   100 N.Y.S.2d 474 (Sup. Ct. N.Y. Cty. Oct. 25, 1950), *aff'd*, 282 A.D. 940 (1st
   Dep't 1953)..............................................................................................12

*D & R Global Selectoins, S.L. v. Bodega Olegario Falcon Pineiro*,
   No. 603732/2007, 2018 N.Y. Misc. LEXIS 6431 (N.Y. Cnty. Sup. Ct. Dec.
   14, 2018) ....................................................................................................8

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund*,
   527 U.S. 308 (1999).............................................................................2, 6, 11

*Isabella City Carting Corp. v. Martinez*,
   15 A.D.3d 281 (1st Dep't 2005) ....................................................................9

*Levy v. Carol Mgmt. Corp.*,
   260 A.D.2d 27 (1st Dep't 1999) ................................................................13, 14

-ii-

*Matter of Gordon v. Marrone*,
  155 Misc.2d 726 (Sup. Crt. West. Cty. 1992), *aff'd*, 202 A.D.2d 104 (2d Dep't
  1992) ................................................................................................................................7

*Medallion Fin. Corp. v. Tsitridis*,
  163 N.Y.3d 396 (1st Dep't 2022) ..................................................................................11

*Nachbaur v. Am. Transit Ins. Co.*,
  300 A.D.2d 74 (1st Dep't 2002) .....................................................................................10

*Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts, Inc.*,
  703 N.Y.S.2d 3 (1st Dep't 2000) .....................................................................................6

*Nat'l Union Fire Ins. Co. v. Advanced Empl. Concepts, Inc.*,
  269 A.D.2d 101 (1st Dep't 2000) ...................................................................................12

*NYS Acupuncture PC v. NYS Ins. Fund*,
  No. CV-723175-16/KI, 2021 ............................................................................................8

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
  2021 N.Y. LEXIS 2577 (2021) (Wilson, J., dissenting)...................................................4

*Silver Cup Funding LLC v. Horizon Health Center, Inc.*,
  70 Misc. 3d 1201(A) (Sup. Ct. Ontario Cty. Dec. 18, 2020)..........................................12

*Skolnick v Goldberg*,
  297 AD2d 18 (1st Dep't 2002) .........................................................................................8

*Timoney v Newmark & Co. Real Estate*,
  299 AD2d 201 (1st Dep't 2002) .......................................................................................8

*Viacom, Inc. v. Silverwood Development, Inc.*,
  188 A.D.2d 1057 (4th Dep't 1992) .................................................................................14

*Von Bock v. Metropolitan Life Ins. Co.*,
  223 A.D.3d 700 (1996) ...................................................................................................11

*Yenom Corp. v. 155 Wooster St. Inc.*,
  33 A.D.3d 67 (1st Dep't 2006) .........................................................................................8

**OTHER AUTHORITIES**

22 NYCRR 130-1.3 ...........................................................................................................8, 14

22 NYCRR 1200.00...............................................................................................................9

CPLR 3218...................................................................................................................13, 14

CPLR 5704............................................................................................................................7

-iii-

CPLR 6201......................................................................................................................11, 12

CPLR 6201 (3)......................................................................................................................11

CPLR 6201 and 6212(b).........................................................................................................6

CPLR 6212(b)...................................................................................................................11, 12

CPLR 6301.............................................................................................................................5

CPLR 7502.............................................................................................................................5

CPLR 7503.............................................................................................................................4

https://www.bloomberg.com/confessions-of-judgment.........................................................1, 13

-iv-

Respondents Dreamtex, Inc. ("Dreamtex") and Evan Young ("Young" and together with Dreamtex, the "Respondents"), by and trough the undersigned attorneys, hereby submit this Memorandum of Law in Support of their Motion for Sanctions against Petitioner Alva Advance LLC ("Alva" or "Petitioner") and Petitioner's counsel, Gene W. Rosen.

## PRELIMINARY STATEMENT

Our state judicial system has promulgated Uniform Rules of Professional Conduct for a reason. A court must be able to trust that a lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal…; or

(2) fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

This ethical duty of candor could not be more important than on an *ex parte* application. It is even more vital when that *ex parte* application seeks the extraordinary relief of freezing out-of-state bank accounts. Indeed, the abuse of judgment collection devices on out-of-state bank accounts by the merchant cash advance ("MCA") industry was so widespread that our Legislature had to place a blanket prohibition on the use of confessions of judgment for out-of-state debtors in August 2019. This abhorrent abuse of our judicial system was exposed by Bloomberg News in its groundbreaking series titled: Sign Here to Lose Everything. Our Legislature expressly credited Bloomberg News with exposing this abuse in the legislation.[1]

The MCA industry has now devised an end run around this legislative will, and unfortunately, the tactic now used depends on a knowing and willful violation of controlling New York law, and a knowing and willful violation of an attorney's duty of candor with the tribunal. The highest court of our State has long held that injunctive relief is not permitted where the underlying action seeks only monetary damages. *See Credit Agricole Indosuez v. Rossiyskiy*

---

[1] https://www.bloomberg.com/confessions-of-judgment

*Kredit Bank*, 94 N.Y.2d 541 (2000). So has the highest court of our country. *See Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999).

Despite this dispositive, controlling authority by the highest court of our State, the MCA industry, through The Rosen Law Firm, has routinely sought and obtained ***ex parte*** preliminary injunctive relief freezing out-of-state bank accounts by disregarding their ethical duties of candor with courts primarily within Nassau County. In 2022 alone, The Rosen Law Firm, on behalf of various MCA companies, has filed no less than twenty-two ***ex parte*** applications for preliminary injunctive relief. In doing so, The Rosen Law Firm has failed to inform those courts of the controlling law of this State, and even worse, has failed to inform those courts of adverse controlling authority involving not only the same law firm, but also ***the very same MCA company at issue on this motion***—Alva Advance. *See Alva Advance LLC v. F & L Express Inc.*, No. 2021-07872 (2d Dep't Oct. 29, 2021). It also failed to inform those courts that many judges within Nassau County have refused to grant the preliminary injunctive relief requested by The Rosen Law Firm, striking the offending requested relief on their own initiative.

Regrettably, the defiance and recalcitrance of The Rosen Law Firm cannot be stopped unless this Court takes action to deter future misconduct. In October 2021, The Rosen Law Firm was specifically apprised of controlling adverse authority prohibiting its routine practice. *See* Heskin Affirm., June 6, 2022, Ex. 6 (attaching a copy of *Cobalt Funding Solutions, LLC v. Litigation Practice Group PC*, No. 2021-07565 (2d Dep't Oct. 20, 2021)). That did not stop the Rosen Law Firm as it continued its practice when the Second Department also told it "no" in October 2021. Undeterred by binding Second Department precedent directly on point, The Rosen Law firm has struck again in this Petition. But when its hand got caught in the cookie jar, The

Rosen Law Firm, and its client, Alva Advance, thought all it had to do is run and hide by withdrawing their improperly obtained TRO.

Unfortunately, the damage caused by The Rosen Law Firm and its client is not so easily corrected. Despite repeated requests for The Rosen Law Firm to send a copy of their retraction directly to the out-of-state banks, it has failed to do so. As a direct result, it took days to unfreeze the out-of-state bank accounts, and resulted in more than $625 in bank fees for an already struggling small business. This unrepentant and continuous conduct by The Rosen Law Firm and its client, Alva Advance, cannot go overlooked. If not immediately deterred by this Court in the form of severe sanctions, numerous other small businesses and their employees, owners and dependents will continue to be similarly victimized. This new abuse of our judicial system needs to be stopped, and it needs to be stopped now by sending a clear message to the Rosen Law Firm and the MCA industry that our New York Court System will not be spoiled once again by a handful of bad actors.

Accordingly, for the reasons more fully set forth herein, Respondents respectfully request that this Court enter an order: (i) sanctioning Petitioner and The Rosen Law Firm for engaging in frivolous and directing that they pay Respondents' reasonable attorneys' fees in bringing this motion and (ii) directing that Petitioner and The Rosen Law Firm pay $30,000 to the Lawyers' Fund for Client Protection in order to protect the integrity of the courts and send a strong message to the Bar at large that courts will not tolerate Mr. Rosen's conduct in this case.

## **FACTUAL BACKGROUND**

Respondents are the owners and operators of a small textile manufacturer based in Florida, which makes linens and other accessories for the hospitality industry. *See* Affidavit of Evan Young dated May 24, 2022 (the "Young Aff."), ¶ 2. On or about September 2, 2021, Respondents entered into a so-called receivable purchased agreement (the "Agreement") with Alva pursuant to which

-3-

Alva advanced certain funds to Dreamtex in exchange for the purported purchase of Dreamtex's future receivables. *See* Agreement attached as Exhibit 15 to Affirmation of Shane R. Heskin dated June 6, 2022 (the "Heskin Aff.").

While titled a receivables purchase agreement, the Agreement functioned like a loan that may be subject to New York's usury laws. *Compare Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 2021 N.Y. LEXIS 2577, *25 n. 14 (2021) (Wilson, J., dissenting) (where an agreement was simply labeled "factoring agreement" but did not in actuality identify or collect the receivables, and instead provided for fixed daily payments where the "lender" did not bear any risk of nonpaid receivables, the transaction was not a true factoring agreement and in fact a high interest loan) (citing *Adar Bays, LLC v. GeneSYS ID, Inc.*,37 N.Y.3d 320 (2021)) *with Principis, Donatelli v. Siskind,* 170, A.D.3d. 433, 434 (2d Dep't 2021).[2] When Dreamtex's receivables slowed and it could not meet the oppressive repayment obligations of the Agreement, Alva declared a default and filed an arbitration demand (the "Arbitration Demand") with Arbitration Services, Inc. ("ASI"), an arbitration company believed to serve primarily the MCA industry with arbitrators and rules designed to favor MCA companies and insure the quick entry of judgments against merchants such as the Respondents.[3] *See* Arbitration Demand, Heskin Aff, Ex. 15.

The Arbitration Demand asserted eight (8) claims, all of which sought only money damages from the Respondents. *Id.*

---

[2] Justice Wilson's commentary on MCA agreements in his dissent in *Plymouth Venture Partners* is notable because Justice Wilson is the author of the majority opinion in *Adar Bays*, the New York Court of Appeals' most recent and thorough examination of usury law. Although the commentary appears in a dissent, the issue which split the court was not the usury question, thus the presence of the commentary within a dissent does not indicate disagreement on the usury analysis by the Court's majority.

[3] Among other unconscionable rules, both so-called arbitral forums allow default judgments to be entered withing seven (7) days of service (which can be done by email), long before a respondent has an opportunity to challenge the arbitral forum under CPLR 7503.

On May 9, 2022, simultaneous with the filing of the Arbitration Demand, Petitioner filed an *ex parte* application (the "TRO Application") with this Court seeking a temporary restraining order under CPLR 6301 and CPLR 7502 that would freeze Respondents' bank accounts at Bank of America, PNC Bank and Truist Bank. *See* Heskin Aff., Ex. 3. All of these accounts were opened and maintained by Respondent at Florida branches of the Banks. *See* Young Aff., ¶ 4.

In support of the TRO Application, Petitioner's counsel submitted an affirmation (the "Rosen Affirmation") stating that the sole basis for the restraints was that based upon his experience in another unidentified matter involving different parties, Respondents would be contacted by unidentified debt settlement companies trolling the New York docket and advised to empty their bank accounts, thereby rendering any final judgment ineffectual. *See* Heskin Aff., Ex. 4, ¶¶ 2-3. The Affirmation contains no allegations concerning the Respondents' actual conduct or any basis by which the Court could infer Mr. Rosen would have personal knowledge of the Respondents' financial affairs and transactions, only a speculative assertion that if not granted, "Respondents will empty [their accounts] out in order to evade paying Petitioner." *Id*. at ¶ 3.

Additionally, under penalty of perjury, Mr. Rosen affirmed that the restraints requested by the TRO Application were "routinely granted" by courts and, as support, he cited twenty-two (22) others where such *ex parte* relief had been obtained based upon applications that were virtually identical to the TRO Application in this case. *Id.* at ¶ at 4. All of them were obtained solely in Nassau County, and most, if not all of them, were obtained by The Rosen Law Firm.

Tellingly, Mr. Rosen failed to advise this Court that since January 1, 2022, at least ten (10) identical attempts in Nassau County had been stricken unilaterally by the court or denied. *See* Heskin Aff., Ex. 12. More importantly, Mr. Rosen failed to advise this Court of contrary Second Department precedent vacating identical *ex parte* orders to show cause in *Cobalt Funding*

*Solutions, LLC v. Litigation Practice Group PC*, No. 2021-07565 (2d Dep't Oct. 20, 2021) and

*Alva Advance LLC v. F&L Express Inc.*, Appellate Division Docket No. 2021-07872 (2d Dep't

Oct. 29, 2021).  At the time he filed the TRO Application, Mr. Rosen was well aware of both the

*Cobalt* and *F&L Express* decisions.  Not only had Respondents' counsel emailed the *Cobalt*

decision to Mr. Rosen in October 2021, but Mr. Rosen was counsel of record in the *F&L Express*

matter.  *See* Heskin Aff., Exs. 6-7.

Finally, the TRO Application failed to advise the Court of controlling adverse precedent

by New York's highest court.  Both the New York Court of Appeals and the U.S. Supreme Court

have held that a creditor seeking purely monetary damages cannot seek preliminary injunctive

relief.  *See Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000); *Grupo*

*Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999).  Rather, under New York

law, a creditor seeking such relief must seek an attachment order, which requires evidence of actual

fraud and the posting of a bond.  *See* CPLR 6201 and 6212(b).  Moreover, under the Separate

Entity Rule, the Petitioner was prohibited from restraining or attaching accounts that were opened

and maintained outside of New York.  *Nat'l Union Fire Ins. Co. v. Advanced Emp't Concepts,*

*Inc.*, 703 N.Y.S.2d 3, 4 (1st Dep't 2000).  Thus, under any scenario, if Mr. Rosen had been candid

with the Court and disclosed adverse authorities, controlling precedent and cited the correct

standards, this Court would never had entertained the TRO Application.

Induced by Mr. Rosen's omissions and misstatements of law, this Court entered the TRO

on May 12, 2022.  *See* NYSCEF #9.  The TRO was served on Bank of America, Truist Bank and

PNC Bank and approximately $30,000 in Respondents' accounts were frozen.  *See* Young Aff., ¶

4.

-6-

At the same time, on behalf of another client, Mr. Rosen obtained an identical temporary restraining order in the matter captioned *22 Capital Inc. v. Dreamtex Inc. and Evan Young*, Supreme Court of the State of New York, County of Nassau, Index No. 606109/2022 (the "22 Capital Matter"). *See* Heskin Aff., Ex. 16. Mr. Rosen's application in the *22 Capital Matter* suffered the same infirmities as the TRO Application in this matter, and by email dated May 17, 2022, Respondents' counsel advised Mr. Rosen that they would be making a CPLR 5704 application to the Second Department at 11 a.m. on May 18, 2022 seeking to vacate the restraining order entered in the *22 Capital Matter*. *See* Heskin Aff., Ex. 8. At 9:22 a.m. on May 18, 2022, the TRO Application was withdrawn (Heskin Aff., Ex. 17) and on May 20, 2022, this Court entered a Decision and Order vacating the restraints imposed on the banks. *See* NYSCEF #15.

At or around the same time, The Rosen Law firm attempted to obtain the same relief against another out-of-state debtor in Texas. Because this debtor maintained bank accounts in a Texas only bank, The Rosen Law Firm could not use the New York Court System to reach an out-of-state bank account. After an evidentiary hearing proving that representations contained in Mr. Rosen's supporting affidavit could not be substantiated by admissible evidence (and indeed were proven to be false), the Court denied the request for pre-judgment attachment. *See* Heskin Aff., Ex. 14.

## LEGAL ARGUMENT

### I.      THE COURT SHOULD AWARD SANCTIONS.

The Court's authority to impose sanctions serves the dual purpose of making a party whole and vindicating the judicial system. *See Matter of Gordon v. Marrone*, 155 Misc.2d 726, 728 (Sup. Crt. West. Cty. 1992), *aff'd*, 202 A.D.2d 104 (2d Dep't 1992). Pursuant to NYCRR 130-1, a court may award costs and impose sanctions for "frivolous conduct" which is defined in subsection (c) to include conduct "completely without merit in law." NYCRR 130-1. Conduct is "completely

-7-

without merit in law" if counsel knew its position lacked merit or its lack of merit could have been ascertained by a reasonable review of existing law. *See Yenom Corp. v. 155 Wooster St. Inc.*, 33 A.D.3d 67, 70 (1st Dep't 2006) (imposing sanctions where counsel knew appeal was frivolous); *Skolnick v Goldberg*, 297 AD2d 18, 21 (1st Dep't 2002) (declaratory judgment action and appeal were frivolous where based on unenforceable clause in purchase agreement to which defendant was not a signatory); *Cicio v. New York*, 98 A.D.2d 38, 40 (2d Dep't 1983) (imposing sanctions where "even a modicum of thought and research given to this case" would have revealed that party's position was untenable). This is particularly true when counsel is warned in advance that his position has no merit. *See Timoney v Newmark & Co. Real Estate*, 299 AD2d 201, 202, (1st Dep't 2002), *leave dismissed* 99 NY2d 610 (2003) (sanctions imposed for frivolous appeal where defendant made efforts to warn plaintiff that action had no merit and should be withdrawn).

The imposition of sanctions in this case is warranted, indeed, necessary, because Alva and The Rosen Law Firm knew their conduct was frivolous, refused to take steps necessary to abate their conduct, and have a long history of taking advantage of small, unrepresented debtors. *See D & R Global Selectoins, S.L. v. Bodega Olegario Falcon Pineiro*, No. 603732/2007, 2018 N.Y. Misc. LEXIS 6431 at *5 (N.Y. Cty. Sup. Ct. Dec. 14, 2018); *see also NYS Acupuncture PC v. NYS Ins. Fund*, No. CV-723175-16/KI, 2021 N.Y.L.J. Lexis 892 (Kings Cty. Civ. Ct. June 24, 2021) (plaintiff's conduct was frivolous when they repeatedly commenced proceedings related to the same matter, even when all prior related matters had been dismissed).

Accordingly, Petitioner and The Rosen Law Firm should be sanctioned by directing that they pay the Respondents' reasonable attorney's fees in making this application and, further, that that they be directed to pay a substantial penalty to the Lawyers' Fund for Client Protection pursuant to 22 NYCRR 130-1.3.

-8-

**A.** **Sanctions are warranted because Petitioner's counsel failed to cite adverse authorities from his own cases.**

"The function of [moving papers] is to assist, not mislead, the court." *Cicio v. New York*, 98 A.D.2d 38, 40 (2d Dep't 1983). Accordingly, "[c]ounsel have an affirmative obligation to advise the court of adverse authorities, though they are free to urge their reconsideration." *Id.; see also* Rules of Professional Conduct, 22 NYCRR 1200.00 Rule 3.3 (2) ("A lawyer shall not knowingly . . . fail to disclosure to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.") The failure to advise the court of adverse authority is grounds for sanctions. *See, e.g., Isabella City Carting Corp. v. Martinez*, 15 A.D.3d 281, 282 (1st Dep't 2005) ("[W]e note with disapproval that counsel for petitioner has brought approximately 70 proceedings in this Court and the Second Department, in which the same or similar arguments have been repeatedly raised, and has failed to mention in his appellate briefs the existence of case law rejecting his arguments.").

In his moving affirmation, Mr. Rosen claims that restraining orders such as the *ex parte* TRO entered in this case, are "routinely granted" and cites 22 cases wherein he applied for and obtained *ex parte* restraining orders from various courts. *See* Heskin Aff., Ex. 4, ¶ 4. However, Mr. Rosen failed to advise this Court that in at least ten (10) other instances involving the same exact circumstances and claims, courts have declined to grant the *ex parte* temporary restraints sought by The Rosen Law Firm, including at least two instance involving restraints sought by Mr. Rosen on behalf of Petitioner Alva. *See* Heskin Aff., Ex. 12. Thus, far from "routinely granting" such *ex parte* orders, courts "routinely reject" Mr. Rosen's applications, a fact which Mr. Rosen is well aware of and is required to disclose, but does not. This failure alone warrants the imposition of sanctions. *See Cattani v Marfuggi*, 26 Misc 3d 1053, 1059 (Sup. Ct., N.Y. Cty., Nov. 25, 2009),

-9-

*aff'd* 74 A.D.3d 553 (awarding attorneys' fees and imposing sanctions, where "the lack of merit was brought to plaintiff's and his counsel's attention, and they persisted in maintaining the action").

**B.**    **Sanctions are warranted because Alva and The Rosen Law Firm failed to cite controlling adverse authority.**

Most incredibly, Mr. Rosen's affirmation and Petitioner's supporting brief do not cite controlling authority—directly involving Alva and its counsel. On at least two occasions, the Second Department has summarily vacated or modified identical temporary restraining orders, including one involving Alva and Mr. Rosen. *See Alva Advance LLC v. F & L Express Inc.*, No. 2021-07872 (2d Dep't Oct. 29, 2021) and *Cobalt Funding Solutions, LLC v. Litigation Practice Group PC*, No. 2021-07565 (2d Dep't Oct. 20, 2021), attached as Exhibits 7 and 11 to the Heskin Aff. The orders in those cases are indistinguishable from the order here. Having been a party to at least one of those appeals (Heskin Aff. Ex. 7), Alva and Mr. Rosen cannot say that they were unaware of the decision. Moreover, counsel for Respondents informed Mr. Rosen of the *Cobalt* decision in October 2021 (Heskin Aff., Ex. 6), yet he continues to seek impermissible orders of this nature. Because these decisions specifically reject Mr. Rosen's *ex parte* contentions, they should have been brought to the attention of this Court. Plainly, Mr. Rosen failed to cite them because, if it had, this Court would not likely have granted the temporary relief requested and obtained. Mr. Rosen's failure to bring these cases to the Court's attention on an ***ex parte*** application is sanctionable. *See Nachbaur v. Am. Transit Ins. Co.*, 300 A.D.2d 74, 76 (1st Dep't 2002) (awarding sanctions while noting, "[w]e particularly disapprove of the failure of plaintiff's attorney to cite adverse authority. The failure is especially glaring in this case since plaintiff's attorney [was expressly aware of the adverse authority] and unless and until overruled or disagreed with by [the First Department, Appellate Division], is 'controlling' authority that plaintiff's attorney was obligated to bring to the attention of this Court.")

-10-

**C.      Sanctions are warranted because Mr. Rosen cites the wrong standard in obtaining the TRO.**

Perhaps most disturbing, Mr. Rosen persistently cites the wrong standard in obtaining temporary restraining orders and utterly ignores Court of Appeals precedent that prohibits New York courts from restraining accounts opened and maintained in branches located outside of New York.  Both the New York Court of Appeals and the U.S. Supreme Court have held that a creditor seeking purely monetary damages cannot seek preliminary injunctive relief to secure payment of a judgment or arbitration award.  *See Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000); *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999).  This is because when "plaintiffs can be fully compensated by a monetary award," there is "no irreparable harm" warranting a preliminary injunction. *Medallion Fin. Corp. v. Tsitridis*, 163 N.Y.3d 396, 397 (1st Dep't 2022). Even a quick review of the Arbitration Demand reveals that Alva is only seeking monetary damages in the arbitration and thus, not entitled to a temporary restraining order securing payment of any judgment.  *See* Heskin Aff., Ex. 15.

A creditor seeking pre-judgment restraints to secure a money judgment must seek an attachment order under CPLR 6201 which requires not just that the movant have a likelihood of success on the merits, but also that a creditor establish that "the defendant, with the intent to defraud his creditors or frustrate the enforcement of a judgment . . . has assigned, disposed of, encumbered or secreted property." *See* CPLR 6201 (3).  Additionally, a creditor must post a bond for the purposes of making the defendant whole for all costs and damages, including reasonable attorneys' fees, which may be sustained by the reason of the attachment if the debtor recovers judgment or it is finally decided that the plaintiff was not entitled to an attachment order.  CPLR 6212(b).  Typically, courts require the undertaking to be in an amount equal to or greater than the attachment amount. *See, e.g,, Von Bock v. Metropolitan Life Ins. Co.*, 223 A.D.3d 700 (1996).

-11-

Plainly, Alva Advance and Mr. Rosen sought to avoid the heightened standard for attachment under CPLR 6201 and the bonding requirement of CPLR 6212 (b) by seeking a temporary restraining order under 6301. However, "even a modicum of thought and research" would have revealed that Petitioner was not entitled to a restraining order and that its position utterly lacked merit warranting the imposition of sanctions. *See Cicio v. New York*, 98 A.D.2d 38, 40 (2d Dep't 1983) (imposing sanctions where "even a modicum of thought and research given to this case" would have revealed that party's position was untenable).

### D. Sanctions must be awarded because the TRO unequivocally violated the Separate Entity Rule.

A modicum of thought and research would also have revealed that the TRO Application violated the long-standing Separate Entity Rule. The Separate Entity Rule provides that "each branch of a bank is a separate entity, [and is] in no way concerned with accounts maintained by depositors in other branches or at a home office." *Cronan v. Schilling,* 100 N.Y.S.2d 474, 476 (Sup. Ct. N.Y. Cty. Oct. 25, 1950), *aff'd*, 282 A.D. 940, (1st Dep't 1953). Under the rule, a creditor must be able to serve a restraining notice on the branch where the account is located for the restraints to have an effect. *See Nat'l Union Fire Ins. Co. v. Advanced Empl. Concepts, Inc.*, 269 A.D.2d 101, 102 (1st Dep't 2000) (vacating a restraining notice served on a national bank since the debtors' bank accounts were opened and maintained at branches in Florida). Indeed, relying upon the Separate Entity Rule two courts have recently vacated *post-judgment* restraining notices and levies reaching funds in out-of-state bank accounts and ordered that the creditors return all funds obtained by the creditor through the improper levies. *See Silver Cup Funding LLC v. Horizon Health Center, Inc.,* 70 Misc. 3d 1201(A) (Sup. Ct. Ontario Cty. Dec. 18, 2020) (vacating restraints and levy imposed upon accounts maintained at New Jersey branch of TD Bank) and *Capital Advance Services, LLC v. Zomongo.tv USA Inc.*, Index No. 1229/2018, Decision and Order

-12-

(Kings Cnty. Sup. Ct. May 6, 2022) (vacating restraints and levy imposed upon accounts maintained at an Arizona branch of Harris Bank).[4]  If a creditor cannot reach assets in an out-of-state bank account even after a judgment has been entered, it certainly cannot restrain such accounts prior to the entry of a judgment as was done here.

### E.  Sanctions must be awarded to deter future conduct by Petitioner and the Bar at large.

Courts have long recognized that sanctions "are useful in deterring frivolous conduct not only by the particular parties, but also by the Bar at large." *Levy v. Carol Mgmt. Corp.,* 260 A.D.2d 27, 34 (1st Dep't 1999). That goal is particularly applicable here because the legislature recently amended New York's judgment statutes to prevent the very thing Mr. Rosen has done here – freeze the accounts of out-of-state debtors without any prior notice or opportunity for the debtor to object.

In 2019, Bloomberg News published a series of investigative news articles titled: *Sign Here To Loose Everything* that demonstrated how MCA companies such as Alva were abusing the New York judicial system to obtain tens of thousands of confessed judgments against out-of-state entities with no connections to New York.  *See* https://www.bloomberg.com/confessions-of-judgment.  As observed by the Advisory Committee Notes to CPLR 3218: "This practice [] resulted in some unscrupulous creditors using New York law and procedure to freeze and then seize debtors' assets based on a judgement entered in a venue far from where the agreement was executed and the parties reside, making it difficult for a debtor to contest abusive conduct by a creditor."  Advisory Committee Notes to CPLR 3218 (2019).  To correct this abuse, the New York Legislature banned the use of confessions of judgment against out-of-state debtors, effective September 1, 2019.  *See* CPLR 3218.

---

[4] Copies of these decisions are attached as Exhibits 18 and 19 to the Heskin Aff.

-13-

Just four months after the New York Legislature banned the use of confessions of judgment against out-of-state entities and the abuse that came with it through out-of-state bank restraints and levies, Mr. Rosen devised a system whereby he would demand arbitration and simultaneously seek *ex parte* restraining notices in aid of said arbitration. *See* Heskin Aff., ¶ 19, Ex. 9. Using this scheme, The Rosen Law Firm could circumvent the ban on out-of-state confessions of judgment and obtain exactly what the amendment to CPLR 3218 was intended to prevent – the freezing of out-of-state bank accounts based upon an order obtained in a venue far from where the agreement was executed and the debtor resides.

The public policy concerns warranting the amendment of CPLR 3218 cannot be circumvented by Mr. Rosen's scheme. As set forth above, controlling precedent and the Separate Entity Rule bar unscrupulous creditors from restraining out-of-state bank accounts through the expediency of an *ex parte* temporary restraining notice in aid of arbitration. Substantial financial sanctions are necessary to send a strong massage to the Bar that such conduct will not be tolerated and that the policies concerns in amending 3218 will be upheld. *See Levy,* 260 A.D.2d at 27. In fixing financial sanctions, the "penalty imposed should be []proportionate to the amount sought in the lawsuit, the culpability of [the actor's] conduct, and the prejudice to [the other party]." *Viacom, Inc. v. Silverwood Development, Inc.,* 188 A.D.2d 1057, 1058 (4th Dep't 1992). Here, Petitioner froze approximately $30,000 in funds through the improperly obtained TRO. In light of the severity and breadth of Petitioner and The Rosen Law Firm's conduct, it is respectfully requested that, in addition to costs and attorney's fees, Petitioner and The Rosen Law Firm should be sanctioned in the full amount of the frozen funds ($30,000) and that it be paid to the Lawyers' Fund for Client Protection pursuant to 22 NYCRR 130-1.3.

-14-

## **CONCLUSION**

For the foregoing reasons, Respondents respectfully request that this Court: (i) sanctioning Petitioner and The Rosen Law Firm for engaging in frivolous and directing that they pay Respondents' reasonable attorneys' fees in bringing this motion and (ii) directing that Petitioner and The Rosen Law Firm pay $30,000 to the Lawyers' Fund for Client Protection in order to protect the integrity of the courts and send a strong message to the Bar at large that courts will not tolerate Mr. Rosen's conduct in this case.

Dated: New York, New York
June 6, 2022

By:   /s/ Shane R. Heskin
        Shane R. Heskin, Esq.
        Stuart J. Wells, Esq.
        7 Times Square, Suite 2900
        New York, NY 10036-6524
        T: 215-864-6329
        F: 215-399-9603
        heskinss@whiteandwilliams.com
        wellss@whiteandwilliams.com

-15-